UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TRACEY ANN BELL,

   Plaintiff,

  v.               16-CV-193
                  DECISION AND ORDER
NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

   Defendant.

---

  On March 4, 2016, the plaintiff, Tracey Ann Bell, brought this action under the Social Security Act ("the Act"). She seeks review of the decision of the Acting Commissioner of Social Security ("the Commissioner") that she was not disabled within the meaning of the Act. Docket Item 1; Tr. 18-25. On October 26, 2016, this Court referred this case to United States Magistrate Judge Michael J. Roemer. Docket Item 7. On September 30, 2016, Bell moved for judgment on the pleadings, Docket Item 6, and on December 12, 2016, the Commissioner responded and cross moved for judgment on the pleadings, Docket Item 9.

  On October 25, 2017, Judge Roemer issued a Report and Recommendation ("R&R") finding that Bell's motion for judgment on the pleadings should be denied and that the Commissioner's cross motion for judgment on the pleadings should be granted. Docket Item 12. On November 8, 2017, Bell objected to the R&R. Docket Item 13. The

---

[1] When this case was filed, Carolyn W. Colvin was the Acting Commissioner of Social Security. Because Nancy A. Berryhill is currently the Acting Commissioner, she is "automatically substituted" as the defendant in this case. Fed. R. Civ. P. 25(d).

Commissioner did not file a response to Bell's objection.  Oral argument was held on January 3, 2018, and this Court reserved decision.  Docket Item 18.  For the reasons stated below, this Court adopts the R&R, denies Bell's motion, and grants the Commissioner's cross motion.

## BACKGROUND

**I.      PROCEDURAL HISTORY**

On August 22, 2012, Bell applied for Social Security Disability Insurance benefits ("SSDI").  Tr. 127-28.[2]  She claimed that she had been disabled since August 2011 due to chronic immune thrombocytopenic purpura, chronic iron deficiency, back and sciatic nerve injury, knee injury, confusion, some memory loss, and uneven gait.  Tr. 139.  On November 15, 2012, Bell received notice that her application was denied because she was not disabled under the Act.  Tr. 79.  She requested a hearing before an administrative law judge ("ALJ"), Tr. 86-87, which was held on February 6, 2014, Tr. 30.  The ALJ then issued a decision on April 11, 2014, confirming the finding that Bell was not disabled under the Act.  Tr. 29.  Bell appealed the ALJ's decision, but her appeal was denied, and the decision then became final.  Tr. 1.  On March 4, 2016, Bell filed this action, asking this Court to review the ALJ's decision.  Docket Item 1.

**II.     RELEVANT MEDICAL EVIDENCE**

Although this Court adopts Judge Roemer's excellent recitation of the evidence, it provides the following summary to focus on the medical evidence most relevant to

---

[2] Citations to Tr. __ refer to the administrative record—i.e., Docket Item 5.

2

Bell's objections. Bell was examined by several medical providers, but three are of particular significance to the claim of mental impairment at issue here—Gregory Fabiano, Ph.D.; J. Echevarria, M.D.; and Bela Ajtai, M.D.

On October 23, 2012, Dr. Fabiano conducted a psychiatric evaluation of Bell. Tr. 244. He noted that Bell denied any symptoms of depression, anxiety, mania, or other thought disorders, but that she did complain of memory-related problems. Tr. 245. Dr. Fabiano observed her demeanor, appearance, thought process, and memory; he found that she was responsive to questions, that she was cooperative, and that her memory seemed intact. Tr. 245-46. He concluded that "the results of the examination do not appear to be consistent with psychiatric problems that would be significant enough to interfere" with daily functioning. Tr. 247.

Two weeks later, on November 7, 2012, Dr. Echevarria, a state agency physician, reviewed Bell's medical records and completed the standard psychiatric review technique form. Tr. 271. Relying on Dr. Fabiano's evaluation, the lack of any psychiatric hospitalizations, and the absence of any psychiatric-related treatments, Dr. Echevarria found that Bell had no medically-determinable impairment. Tr. 283.

Finally, in May 2013 at the request of Bell's treating primary care physician, Tr. 372, Dr. Ajtai conducted a neurological review. He evaluated Bell's cognitive functioning and memory loss based on her self-reported symptoms. *Id.* At the initial consultation on May 8, Dr. Ajtai noted that Bell had some delayed-recall difficulties, and he ordered an MRI to rule out cerebral volume loss, microbleeds, and lesions. Tr. 374. But after reviewing the MRI, Dr. Ajtai found that it was a "[n]ormal MRI scan of the brain." Tr. 371. Dr. Ajtai did note the "[p]rominence of the Meckel's cave bilaterally," but

3

he also noted that this may simply be an anatomical variant, Tr. 371, and referred to this finding as "incidental[]." Tr. 376. After Bell's follow-up visit on June 10, 2013, Dr. Ajtai reported that he "could not find any obvious progressive cause" of the memory loss, Tr. 376, and he recommended "regular brain exercises" and "vitamin supplementations" for any lingering cognitive difficulties, Tr. 378. He also recommended a follow-up MRI with contrast media, Tr. 378, but there is no evidence in the record that Bell ever had that test done.

### III.   THE ALJ'S DECISION

In denying Bell's application for SSDI, the ALJ analyzed her claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. Section 404.1520. The ALJ found that Bell had the following severe impairments: degenerative disc disease of the lumbar spine; obesity; chronic immune thrombocytopenic purpura with low platelet count; and a history of seizure disorder. Tr. 20. Notably, Bell's claimed memory loss and cognitive dysfunction were not included on the list. *Id.* Because the ALJ found Bell's severe impairments not to be medically equal to the impairments in Appendix 1 of the Commissioner's regulations, the ALJ analyzed Bell's residual functioning capacity (RFC).

As part of the RFC, the ALJ considered Bell's subjective mental symptoms, the various medical opinions, the MRI results, and Bell's life activities. Tr. 21-24. The ALJ noted that the neurological testing showed a delayed response but that the MRI and objective testing were negative. Tr. 24. The ALJ also found that the psychiatric evaluations did not evidence any issue with attention, concentration, or memory. *Id.* Although the ALJ found that Bell had some severe impairments as noted above, the

ALJ concluded that Bell had "no mental limitation that would limit the semi-skilled work of her past work." Tr. 24.

The focus of the plaintiff's objection—both to the ALJ's decision and to the R&R—is on this finding. Bell argues that substantial evidence did, in fact, indicate that she suffered from a severe mental impairment; for that reason, she argues, the ALJ erred at step two by excluding a severe mental impairment. Furthermore, Bell argues that because she had a severe mental impairment, the ALJ erred by not applying the "special technique" required to evaluate the impact of a severe mental impairment.

## **LEGAL STANDARDS**

### I. DISTRICT COURT REVIEW

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a de novo review of those portions of a magistrate judge's recommendation to which objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Because Bell has objected here, this Court reviews de novo the portions of the R&R to which Bell objected.

When evaluating a decision by the Social Security Administration ("SSA"), district courts have a narrow scope of review: the reviewing court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and whether the SSA applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court must accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. Section 405(g). Substantial evidence is more than a scintilla and includes "such

5

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## II. DISABILITY DETERMINATION UNDER THE ACT

To determine whether a claimant is disabled within the meaning of the Act, an ALJ must follow a sequential five-step evaluation. *See* 20 C.F.R. Section 404.1520. The plaintiff bears the burden of proving the disability through step four of the evaluation; the burden then shifts to the Commissioner at step five. 20 C.F.R. Section 404.1512(a) ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you . . . ."); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting that the claimant bears the burden of proving a medically determinable impairment through step four).

At step one, the ALJ must determine whether the claimant is engaged in substantial work activity. If so, the claimant is not disabled and the analysis ends; if not, the ALJ proceeds to step two. *See* 20 C.F.R. Section 404.1520(a)(4)(i) and Section 404.1520(b).

At step two, the ALJ considers the severity of the impairment. *See id.* at Section 404.1520(a)(4)(ii). If there is no severe impairment, then the claimant is not disabled and the analysis ends. An impairment is not severe when "it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. Section 404.1521. Additionally, an impairment "must be established by objective medical evidence" rather than a claimant's own statement of symptoms. *Id.*

6

If, however, the claimant suffers from a severe medical impairment, the severity of that impairment is considered at step three, and the ALJ assesses whether it meets or is equal to an impairment in Appendix 1 of the regulations. If the impairment meets this standard, the claimant is disabled. If not, the ALJ moves to step four and determines the claimant's residual functional capacity ("RFC"). *See id.* at Section 404.1520(a)(4)(iii); 404.1520(d)-(e).

The RFC is a holistic assessment of the claimant—including both severe and nonsevere medical impairments—that evaluates whether the claimant can perform her past relevant work. If a claimant can perform her past relevant work, she is not disabled and the analysis ends. But if she cannot, the ALJ proceeds to the final step. *Id.* at 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the burden shifts to the Commissioner to show that the claimant is not disabled by presenting evidence that the claimant is physically or mentally capable of adjusting to an alternative job. *See Bowen*, 482 U.S. at 146 n.5; 20 C.F.R. Section 404.1520(a)(g). At step five, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

### III. SPECIAL TECHNIQUE

In addition to the five-step analysis, the regulations also prescribe an assessment for severe mental impairments, known as the "special technique". 20 C.F.R. Section 404.1520a. If the ALJ finds a severe medically-determinable mental impairment, then the ALJ must—in addition to and separate from the RFC—assess the claimant's rate of

functioning in four categories at the second and third steps of the five-step framework. *See id.; Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008).

Indeed, if an ALJ finds a severe medically-determinable mental impairment, it is legal error not to apply and document the special technique analysis; simply considering the mental impairment as part of the RFC will not cure the error. *See id.; Kennerson v. Astrue*, 2012 WL 3204055 at *15 (W.D.N.Y. Aug. 3, 2012) ("Courts have held that failure to apply the special technique is not harmless error."). When an ALJ has, however, found that there is no severe medically-determinable mental impairment, there is no need to apply the special technique. In those cases, the ALJ should consider the mental impairment only as part of the claimant's RFC. *See* 20 C.F.R. Section 404.1545 ("We will assess your [RFC] based on all the relevant evidence in your case . . . including your medically determinable impairments that are not 'severe[.]'").

## **DISCUSSION**

Bell argues that (1) the ALJ erred in not finding that her memory loss was a severe mental impairment, and consequently (2) the ALJ erred in not applying the special technique when evaluating the impact of her memory loss. Docket Item 6; Docket Item 13. But if the ALJ's finding—that the memory loss was not a severe mental impairment—was supported by substantial evidence in the record, then Bell's objections fail, and the Commissioner's motion should be granted.

Here, the ALJ's finding that Bell did not suffer from a severe medically-determinable mental impairment is supported by substantial evidence. None of the doctors who examined Bell for memory loss or other mental issues found her unable to work. In fact, Dr. Fabiano concluded that Bell had no "limitations in the ability to perform

8

the basic mental activities of work"—an opinion to which the ALJ gave great weight. Tr. 24. Likewise, Dr. Echevarria—who completed the standardized psychiatric review technique form—found that Bell had no medically-determinable mental impairments. Tr. 271.

Despite this evidence, Bell maintains that Dr. Ajtai's findings provide substantial evidence of a severe medically-determinable mental impairment. Docket Item 13 at 4-5. For example, she notes that the MRI shows a prominence of her Meckel's cave bilaterally. *Id.* at 4. But Bell does not suggest what that means, never links that finding to the symptoms she claims to suffer, and does not even attempt to explain Dr. Ajtai's reference to this finding as "incidental[]."[3] Tr. 376. Indeed, Dr. Ajtai's MRI report concluded that the MRI did not reveal any progressive cause of the memory loss, *id.*, another factor on which the ALJ relied, Tr. 24. And there is no evidence in the record that Bell ever had the follow-up MRI with contrast that Dr. Ajtai suggested. So even though Dr. Ajtai noted some delay in recalling information, objective evidence from the MRI coupled with the findings of Dr. Fabiano and the review of Dr. Echevarria provide substantial support for the ALJ's finding that any impairment was not severe.

Because the ALJ's finding that Bell did not have a severe mental impairment is supported by substantial evidence, the ALJ was not required to apply the special technique analysis. Rather, the ALJ was required only to consider all the claimant's impairments—severe or not—as part of the RFC analysis. 20 C.F.R. Section

---

[3] Bell also continually and conclusively refers to Dr. Ajtai's finding of a "Moca score" of 21/30 and a "1/5 delayed recall," *see, e.g.*, Docket Item 13 at 4-5, but she similarly does not offer any explanation of what those scores mean, what any doctor said about them, or how they require—or even support—finding a severe mental impairment.

9

404.1520(e). And the ALJ did just that: he considered Bell's self-reported memory loss, all three relevant provider reports, the objective MRI testing, and Bell's daily activities. Tr. 24. Based on all this evidence, the ALJ concluded that Bell's memory loss would not limit her ability to perform the semi-skilled work that she had done in the past. Tr. 24. Thus, the ALJ appropriately considered Bell's alleged, nonsevere mental impairment as part of the RFC evaluation and was under no duty to apply the special technique analysis.

## **CONCLUSION**

Although this Court has sympathy for Bell and the frustration that must stem from the memory loss she experiences, the ALJ's decision was neither contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, for the reasons stated above and in the R&R, Bell's motion for judgment on the pleadings is DENIED, the Commissioner's cross motion for judgment on the pleadings is GRANTED, and the Clerk of Court is ordered to close the file.

SO ORDERED.

Dated: January 9, 2018
Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE